UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. MADHWA RAJ                                              CIVIL ACTION

VERSUS                                                      NO. 11-1126

LOUISIANA STATE UNIVERSITY, LSU                             SECTION B "5"
BOARD OF SUPERVISORS, LSU HEALTH AND
SCIENCES CENTER IN NEW ORLEANS

ORDER AND REASONS

Before the Court is Defendants', Louisiana State University ("LSU"), LSU Health and Sciences Center in New Orleans ("LSU Health"), and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU Board"), Rule 12(b)(1) 12(b)(5), and 12(b)(6) Motions to Dismiss and responsive pleading (Rec. Doc. Nos. 8 and 20). In response, Plaintiff filed opposition thereto and two amended complaints (Rec. Doc. Nos. 15, 15-1, and 38).[1] Finally, most recently, Defendants filed a Motion to Continue Trial and All Deadlines, Including Deadline for Responding to Requests for Admission (Rec. Doc. No. 39).

Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Defendants' Rule 12(b)(1) Motion is **GRANTED**, as it pertains to LSU and LSU Health.

---

[1] Plaintiff's amended complaints are incorrectly captioned as his "Second Amended" and "Third Amended" complaints, when, in fact, they are his first and second amendments to his original complaint.

1

**IT IS FURTHER ORDERED** that Defendants' 12(b)(6) Motion to Dismiss is **GRANTED**,

**IT IS FURTHER ORDERED** that Defendants' 12(b)(5) Motion to Dismiss is **DISMISSED AS MOOT**, and

**IT IS FURTHER ORDERED** that, in light of the above rulings, Defendants' Motion to Continue Trial and All Deadlines, Including Deadline for Responding to Requests for Admission (Rec. Doc. No. 39) is **DISMISSED as MOOT.**

Cause of Action and Facts of the Case:

Plaintiff alleges he is a tenured professor of Ob-Gyn and Biochemistry at LSU. (Rec. Doc. No. 1, p. 3; Rec. Doc. No. 8-1 at 2). He further alleges that he is being harassed and discriminated against based on his age, race, and national origin. (Rec. Doc. No. 1 at 17). He also asserts that he is the lowest paid professor in the basic sciences department. (Id. at ¶13).

In December of 2009, Plaintiff alleges that the chair of his department began harassing him. (Id. at ¶10). In June of 2010, Plaintiff's laboratory was closed, which Plaintiff asserts was done to force him to retire. (Id. at ¶25). After his lab closed, Plaintiff had to work for an assistant professor in the core lab. (Id. at 36). However, since the lab closed, Plaintiff went on sick leave and Plaintiff concedes that he continues to be on sick leave,

as of the time of the immediate pleadings. (Id. at ¶28,40; *see* Rec Doc. No. 8-1 at 2).

## **LAW and ANALYSIS**

a. Motion to Dismiss for Lack of Subject Matter Jurisdiction, 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits suits to be dismissed when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Lack of subject-matter jurisdiction may be found in three instances: (1) the complaint; (2) the complaint supplemented by undisputed facts supplied in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.2d 657, 659 (5th Cir. 1996). The burden of proof rests with the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)(citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995)).

Defendants contend that LSU and LSU Health lack the capacity to be sued. (Rec. Doc. No. 8-1). Accordingly, Defendants maintain that the Board of Supervisors is the only proper entity to the immediate action. (Id.).

Pursuant to LA. REV. STAT. § 17:3351(A)(1):

> [E]ach post-secondary system management board as a body corporate shall have authority to exercise power necessary to supervise and manage the day-to-day operations of institutions of post-secondary education under its control, including but not limited to the following:
>
> (1) Sue and be sued, including the right, to recover all debts owing to the board or any university or college under its management, and to retain legal counsel therefore.

The LSU Board is the "post-secondary system management board" for LSU and its related entities. LA. REV. STAT. § 17:3351. Thusly, it is the Board that has the capacity to be sued, and LSU and LSU Health were wrongly added as defendants because they lack said capacity. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991)("Although the Board has the right to sue and be sued in its own name, and to hold and use property, the University does not."). As such, the claims against LSU and LSU Health should be dismissed.

Additionally, even though the Board of Supervisors was later added as a defendant, *see* Rec. Doc. No 15, ¶A, it is an arm of the State of Louisiana and enjoys immunity from suit in federal court under the Age Discrimination in Employment Act ("ADEA"). *See Otis v. LSU Med. Ctr.*, 99-3795, 2001 WL 290166, at *4 (E.D. La. Mar. 22, 2001) *aff'd*, 275 F.3d 47 (5th Cir. 2001). "A suit against the Board is effectively a suit against the State of Louisiana." *Marino v. Louisiana State Univ. Bd. of Supervisors*, 96-1689, 1997 WL

358141 at *3 (E.D.L.A. June 25, 1997). Therefore, the ADEA claim against the LSU Board fails.

b. <u>Motion to Dismiss for Insufficient Service of Process, 12(b)(5)</u>

"In the absence of valid service of process, proceedings against a party are void." *See, e.g., Mooney Aircraft, Inc. v. Donnelly*, 402 F.2d 400, 406 (5th Cir. 1968). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Familia de Boom v. Arosa Mercantil, S. A.*, 629 F.2d 1134, 1139 (5th Cir. 1980). In deciding the validity of a party's service of process, "[t]he district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process, as it did in this instance." *C & L Farms v. Federal Crop Insurance Corp.*, 771 F.2d 407 (8th Cir.1985)."

Defendants submit that Plaintiff's service of process upon Defendants was insufficient because suit was not served upon the proper persons. (Rec. Doc. No. 8-1). Defendants maintain that LSU, the Board of Supervisors, and LSU Health in New Orleans were each served through Attorney General, James Caldwell, but because they are all arms of the state, service through the Attorney General *only* is insufficient under law. (Id).

5

Pursuant to FRCP 4(j)(2), when a state or state created organization is served with process, a party must: "a) deliver[] a copy of the summons and of the compliant to its chief executive officer; or b) serv[e] a copy of each in the manner prescribed by that state's law for serving a summon or like process on such a defendant." Here, the chief executive officer of the State of Louisiana is Governor Bobby Jindal. La. Const. Art. IV § 5. ("The governor shall be the chief executive officer of the state.").

Defendants' immediate claim regarding service is now rendered moot, as Plaintiff contends in his Petitioner's Opposition to Defendants' Motion to Dismiss (Rec. Doc. No. 15), that "DOTD[2] was served on Sept. 27, 2011, through Bobby Jindal." (Id.). Accordingly, the motion for dismissal in this regards is moot.

c. <u>Motion to Dismiss for Failure to State a Claim Upon which Relief Can be Granted, 12(b)(6)</u>

Under Rule 12(b)(6), a lawsuit may be dismissed when there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court requires "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility if the pleaded content permits a court "to draw the

---

[2] Plaintiff fails to detail what DOTD means.

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)(citing *Twombly*, 550 U.S. at 556). The Court stated that when there are well-pleaded factual allegations, a court should first assume their veracity and then should determine whether the allegations plausibly give rise to potential relief. *Id.* at 1948-51. When considering a motion to dismiss for failure to state a claim, the Fifth Circuit has found that a district court "must examine the complaint to determine whether the allegations provide relief on any possible theory." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

The facts are to be reviewed with all inferences being drawn in favor of the non-moving party. *McCallum Highlands, Ltd. v. Washington Capital DUS, Inc.*, 66 F.3d 89 (5th Cir. 1995). A plaintiff's complaint "is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).

### **Title VII, Equal Pay Act claims**

Plaintiff submits a discrimination and retaliation claim against Defendants.  (Rec. Doc. No. 15 at 2).  To be successful, a plaintiff must make a *prima facie* showing of discrimination and

7

retaliation under Title VII.  Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

As such, in order to prove discrimination, he must establish that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly-situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

First, in Plaintiff's second amended complaint, (Rec. Doc. No. 15-1, ¶5), he notes that he is a male of East Indian origin and over forty years old.  Second, Plaintiff does not clearly state how he is qualified for the position at issue, but he does allege that he was appointed to a full professor in 1984 and awarded indeterminate tenure in 1987. (Rec. Doc. No. 1, ¶7).

Third, regarding adverse employment action, Plaintiff alleges that in "December of 2009, Dr. Thomas Nolan, departmental chairman, began harassing Dr[.] Raj regarding funding, and claimed that his harassment was coming from the newly appointed Dean, Dr. Steve Nelson." (Id., ¶8).  Plaintiff further asserts that "[a]round March

8

of 2010, Dr. Nolan asked Petitioner to write a letter of retirement effective June 30, 2010" in an effort to "create a false record [to] [suggest] that claimant was considering retirement, and otherwise giving claimant a message." (Id., ¶¶21 and 23). Plaintiff ultimately contends that he was allegedly adversely treated when the Dean of the Medical School "ordered Petitioner's laboratory closed effective June 2010, as a method of harassment and to force Petitioner to retire." (Id., ¶25). Yet, he fails to provide any support, outside of legal argument, for this contention.

Fourth, Plaintiff fails to delineate how he was treated less favorably than other similarly-situated employees. Plaintiff has not been terminated from his position, and according to his pleadings "[t]hese intentional, malicious, discriminatory actions and harassment exacerbated claimant's diabetes, causing him to go on sick leave.  This then lead[sic] to neuropathy and chest pains, causing claimant to continue his sick leave." (Rec. Doc. No. 1, ¶28).  Thusly, it appears that Plaintiff still obtains his position with Defendants. Therefore, in order to satisfy the fourth prong of a discrimination claim, Plaintiff must demonstrate how he was treated less favorably than other similarly-situated employees.

Plaintiff further states that "all associate professors in the basic science departments have fewer years of service than Petitioner" and that his "salary is in the range of Assistant

9

professors." (Rec. Doc. No. 1, ¶ 14). Here, even in favorably viewing Plaintiff's claims, factual allegations with nothing more is not "enough . . . to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff has merely proffered bald legal assertions of discrimination, which do not make a *prima facie* showing of discrimination. Even in reviewing the facts with all inferences being drawn in favor of the non-moving party, Plaintiff has demonstrated nothing more than legal argument to support his discrimination claim. *See McCallum Highlands,* 66 F.3d 89. As such, it fails to show even minimal factual basis for relief.

Second, Plaintiff alleges Defendants retaliated against him.[3] To make a *prima facie* case of retaliation under Title VII, a plaintiff must prove that: "(1) the plaintiff engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action." *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). An employee is considered to have engaged in an activity protected by Title VII if he has either:

---

[3] Plaintiff also asserts that he "filed with the EEOC a charge of discrimination based on age, race, national origin and equal pay, bearing charge number 461-2011-00889, against Defendants," and that "[o]n April 20, 2011, the EEOC issued a notice of right to sue." While Plaintiff did attach his initial EEOC charge of discrimination, complete with his own factual narrative, (Rec. Doc. No. 14-1, at 1-9), it appears that the record does not contain the EEOC right to sue letter.

"(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Griffith v. Louisiana*, 11-245, 2011 WL 3490006, at 10 (E.D. La. Aug. 10, 2011) (quotation marks omitted). However, Plaintiff failed to allege what protected activity he engaged in under Title VII that provoked Defendants to retaliate against him.

Assuming, *arguendo*, that Plaintiff is contending that his February 2011 EEOC charge is the protected activity, all of the alleged discriminatory treatment happened before he filed his charge. Plaintiff contends that in "January 2011, [he] discovered that his salary has been the lowest of all professors with his qualifications currently and continuously for his entire employment period with LSU." In March of 2010, several months before he filed his EEOC charge, "Dr. Nolan asked Petitioner to write a letter of retirement effective June 30, 2010," and the Dean of Medical School closed Plaintiff's laboratory. (Rec. Doc. No. 1, ¶¶12, 21 and 28). Thusly, assuming he was engaging in a protected activity, he fails to delineate what subsequent adverse employment action he suffered pursuant to him engaging in the protected activity. Also, he fails to coherently connect the prior alleged adverse actions to his alleged protected activity of 2011. Accordingly, Plaintiff failed to demonstrate Defendants retaliated against him.

Third, Plaintiff alleges Defendants instituted adverse employment actions against him under Title VII's anti-discrimination provisions. An adverse employment action involves "[u]ltimate employment decisions . . . such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)(citations omitted). First, Plaintiff failed to claim what is the alleged adverse employment action instituted by Defendants. Second, assuming, *arguendo*, that closing "Plaintiff's" laboratory is the alleged adverse employment action, such action does not rise to the level of "hiring, granting leave, discharging, promoting, and compensating." *Felton*, 315 F.3d at 486. Accordingly, he failed to demonstrate any adverse employment actions that would violate any Title VII anti-discrimination provisions.

Finally, in order to establish a claim under the Equal Pay Act, ("EPA") 29 U.S.C. 206(d)(1), a plaintiff must show that: "(1) his employer is subject to the Act; (2) he performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) he was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986). First, Plaintiff has not established that Defendants are subject to the Act. Second, he has not demonstrated that he performed work requiring the same skill, effort and responsibility and under the same working conditions as any female.

Third, Plaintiff's initial complaint failed to allege that he was paid less than any woman. His second amended complaint merely makes a claim "for the intentional and discriminatory payment of salary based on gender." (Rec. Doc. No. 15-1 at 2). His third amended complaint fails to coherently assert any allegation pursuant to any alleged mistreatment under the EPA. He just merely states "Title VII of the Civil Rights Act of 1964, as amended, for discrimination in employment based on gender[] . . ." (Rec. Doc. No. 38).

Further, Plaintiff contends that "all associate professors in the basic science departments have fewer years of service than Petitioner" and that his "salary is in the range of Assistant professors." (Rec. Doc. No. 1, ¶ 14). However, this assertion cuts against his EPA argument, as a successful EPA argument is based, in part, upon a claimant enduring discrimination in the workplace because of the claimant's gender. Here, unless Plaintiff only works with women, this statement cuts against an argument that he was treated differently because of his gender. As such, Plaintiff failed to allege facts to make a *prima facie* case for the EPA.

**42 U.S.C. §§ 1983 and 1985 claims**

Plaintiff's amended complaints contain new allegations against Defendant pursuant to 42 U.S.C. §§ 1983 and 1985.[4] Plaintiff alleges a claim under 42 U.S.C. § 1983 "for discrimination in employment based on gender and race and violation of equal protection based on gender and race." (Rec. Doc. No. 15-1 at 2 and Rec. Doc. No. 38, at 2). However, the Board is an arm of the state and, as such, is immune from suit under 42 U.S.C. § 1983. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Thomason v. Med. Ctr. of Louisiana at New Orleans*, 99-3734, 2001 WL 839030 at *1 (E.D. La. July 23, 2001).

Additionally, Plaintiff alleges a claim pursuant to 42 U.S.C. § 1985 "for conspiracy to discriminate in employment based on gender and race and conspiracy to commit violations of equal protection based on gender and race." (Rec. Doc. No. 38, at 2). For the same reasons the LSU Board enjoys immunity from suit under 42 U.S.C. § 1983, it also enjoys immunity from suit under 42 U.S.C. § 1985. Moreover, Plaintiff failed to proffer any further facts to support

---

[4] Plaintiff also adds two new allegations against Defendants. First, Plaintiff asserts that pursuant to the 5th and 14th Amendments his rights to equal protection and due process have been violated. This claim should be dismissed, as Plaintiff provides nothing more than a one sentence allegation as support for this contention.

Second, Plaintiff contends that he wants to sue Defendants in their individual and official capacities. However, he fails to delineate which Defendants he is suing individually, and in what capacity. LSU, LSU Health and the Board are entities and not actual persons who can be sued in their individual capacities.

these contentions. He merely makes bald legal allegations, such as "42 U.S.C. § 1983 for discrimination in employment based on gender and race and violation of equal protection based on gender and race;" and "42 U.S.C. 1985 for CONSPIRACY TO discriminate in employment based on gender and race and conspiracy to commit violations of equal protection based on gender and race." (Rec. Doc. No. 15-1, pg. 2 ¶E and ¶F). Therefore, Plaintiff's 42 U.S.C. §§ 1983 and 1985 claims fail.

### Breach of Contract, Intentional Infliction of Emotional Distress ("IIED"), Conspiracy for IIED

Plaintiff asserts there was a breach of contract, but he fails to state how the contract was breached or what obligations were owed to him under this contract. Moreover, all he provides is that "[w]hen [Plaintiff] was hired it was with a particular job description and specific duties for a specific rate of pay. This is an agreement whether reduced to a document called 'employment contract' or not." (Rec. Doc. No. 15 at 4). The breach of contract claim fails accordingly.

Second, Plaintiff submits he has an IIED claim. (Id.). In order to have an IIED claim, a plaintiff must demonstrate that a defendant's behavior was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White v. Monsanto*

*Co.*, 585 So.2d 1205, 1209 (La. 1991). This Court has an even higher threshold for IIED claims in the workplace, "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" *Barber v. Marine Drilling Mgt., Inc.*, 2002 WL 237848, at *8 (E.D. La. Feb 15, 2002). Plaintiff has failed to demonstrate how Defendants' behavior was extreme or outrageous. He merely alleges that "[t]he removal of [Plaintiff's] lab, resources and funding was designed to upset [Plaintiff] and convince him to leave." (Rec. Doc. No. 15 at 3).

Third, Plaintiff alleges Defendants conspired to commit IIED against him. (Id.). Louisiana Code of Civil Procedure Article 2324(A) provides, "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." Further, in order to prove conspiracy, a plaintiff must establish that: "(1) an agreement existed to commit an illegal or tortuous act; (2) the act was actually committed and resulted in plaintiff's injury; and (3) there was an agreement as to the intended outcome." *Davis v. Karl*, 10-875, 2010 WL 3312587, at *4 (E.D. La. Aug. 19, 2010). However, Louisiana law does not recognize an independent tort of civil conspiracy, thus, the underlying intentional tort must be actionable. *Conwill v. Greenberg Taurig, LLP*, 09-4365, 2010 WL 3021553, at *6 (E.D.La. July 29, 2010) ("Louisiana does not

16

recognize an independent tort of civil conspiracy."). As such, Plaintiff cannot establish an IIED claim, therefore, he cannot prove conspiracy of such. Moreover, Plaintiff fails to allege that any of the defendants agreed to inflict emotional distress upon Plaintiff.

**Intentional Fraud, Fraudulent Inducement claims**

Plaintiff alleges Defendants committed intentional fraud or fraudulent inducement against him "in promising [Plaintiff] equal pay wit[h] those of commensurate rank and experience . . . and further continuously lying and misrepresenting to [Plaintiff] his status with regard to pay, funding and his lab." (Rec. Doc. No. 1, at 11, ¶ 65).

In order to recover under La. C.C. Art. 1953, a plaintiff must establish the existence of a contract. *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1067 (5th Cir. 1993). Further, in order to prove fraud under La. C.C. Art. 1953, a plaintiff must demonstrate: "(1) an intent to defraud, and (2) actual or potential loss or damages." *Williamson v. Haynes Best Western of Alexandria*, 668 So.2d 1201, 1239 (La. App. 4 Cir. 1997). Here, Plaintiff failed to plead that Defendants promised him a certain pay or that Defendants intended to defraud him concerning his pay. All Plaintiff alleges is that "Plaintiff was not made aware of the inequities of which he complains. The conditions and salaries of

others were purposely concealed from him" and that "[t]he Court has pendent jurisdiction over the following state claims: Under La. Civil Code 2315, 1953, for intentional fraud, fraudulent inducement . . ." (Rec. Doc. No. 15 at 3; Rec. Doc. No. 15-1 at 2).

Accordingly, and for the reasons articulated above, **IT IS ORDERED** that Defendants' Rule 12(b)(1) Motion is **GRANTED**, as it pertains to LSU and LSU Health**.**

**IT IS FURTHER ORDERED** that Defendants' 12(b)(6) Motion to Dismiss is **GRANTED**,

**IT IS FURTHER ORDERED** that Defendants' 12(b)(5) Motion to Dismiss is **DISMISSED AS MOOT**, and

**IT IS FURTHER ORDERED** that, in light of the above rulings, Defendants' Motion to Continue Trial and All Deadlines, Including Deadline for Responding to Requests for Admission (Rec. Doc. No. 39) is **DISMISSED as MOOT.**

New Orleans, Louisiana, this 24th day of February, 2012.

_____
UNITED STATES DISTRICT JUDGE